UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

ACCURATE GRADING QUALITY
ASSURANCE, INC. et al.,

                Plaintiffs,

   -v-                                   No.  12CV9130-LTS-RLE

SANJAY KHOTHARI et al.,

                Defendants.
--------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Plaintiffs Accurate Grading Quality Assurance, Inc. ("AGQA"), Electronic Sales

Dealership Network, Inc. ("ESDN"), The Diamond Center, Inc. ("TDC"), and Steve Yeko

("Yeko") bring this action asserting eleven Causes of Action – breach of contract, fraud,

fraudulent inducement, defamation, unjust enrichment and quantum meruit, deceptive business

practices and false advertising, tortious interference with contract and tortious interference with

prospective business relations and economic advantage, and breach of fiduciary duty – against

Defendants Sanjay Khothari ("Kothari");[1] KGK Jewelry, LLC ("KGK NY"); KGK Group

("KGK Global"); Allen Bloom ("Bloom"); John Thorpe ("Thorpe"); Martin Flyer Jewelry LLC

("Flyer Jewelry"); Knud Hostrup ("Hostrup"); Josh Kaufman ("Kaufman"); Susan Hecht

("Hecht") and Pradeep Soho ("Soho").[2]  Plaintiffs' core claims in this case relate to a contract

---

[1]     According to the Moving Defendants, Plaintiffs have incorrectly spelled Defendant
Sanjay Khothari's name in the caption and it is correctly spelled "Kothari," which is
the spelling used herein.  Plaintiffs refer to "KGK Group" as "KGK Global" in their
papers, and the Court adopts this nomenclature.  Defendants Kothari, Hostrup and
Sahoo have not yet been served or entered an appearance in this action.

[2]     Not all counts are asserted by all Plaintiffs or against all Defendants.

entered into by AGQA and ESDN with KGK NY in October 2011, to create an Internet-based

marketing program (the "E-Commerce Platform") for jewelry store retailers.  The Court has

jurisdiction of this action pursuant to 28 U.S.C. § 1332.

Currently before the Court are two motions to dismiss.  Defendant Thorpe moves,

pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss the claims against

him for lack of personal jurisdiction and failure to state a cognizable claim, and also seeks

attorneys' fees and costs.  Defendants KGK NY, Flyer Jewelry, Bloom, Hecht and Kaufman

(collectively, the "Moving Defendants") move, pursuant to Federal Rules of Civil Procedure

12(b)(6) and 12(f), to dismiss Plaintiffs' Second Amended Complaint (the "SAC") for failure to

state a claim and to strike certain allegations in the SAC.[3]  For the following reasons, Defendant

Thorpe's motion to dismiss is granted in its entirety, the Moving Defendants' motion to dismiss

is granted in part and denied in part, and the motion to strike is denied.


## BACKGROUND

The following recitation is drawn principally from the SAC, the contents of which

have been accepted as true for purposes of the pending motions.  Yeko is the founder and head

of TDC (a retail jewelry store), AGQA and ESDN.  (SAC ¶ 26.)  AGQA is a company that

developed a system of certifying diamond grades "virtually," under which approved jewelers

would issue AGQA-backed certification cards for the jewelry they sold.  (Id. ¶¶ 26-28, 54-55.)

ESDN is an internet-based provider of marketing tools and services.  (Id. ¶ 29.)  In or around

---

[3]     This is the second lawsuit that Yeko has filed against KGK NY, and KGK NY has
        also sued Yeko and ESDN.  See KGK Jewelry LLC v. ESDNetwork, No. 11 CV 9236
        (LTS) (RLE);  see also Accurate Grading Quality Assur. Inc. v. Thorpe, No. 12 CV
        1343 (KPF).

2009 Bloom, acting on behalf of KGK NY (a generic jewelry manufacturer and supplier), began discussing a collaboration between AGQA/ESDN and KGK NY and/or KGK Global.  (SAC ¶¶ 30-31.)  The parties agreed to jointly create and sell the "E-Commerce Platform," which was conceived of as a way to offer generic jewelry to retail jewelry stores through a comprehensive internet-based package, allowing retailers to reach new customers and offer an expanded array of merchandise.  (Id. ¶ 32.)  A central element of the E-Commerce Platform was in-store kiosks to be installed at participating stores, which customers could use to browse virtual merchandise and register for various promotional events.  (Id. ¶ 4.)

Pursuant to the parties' agreement, Yeko, AGQA and ESDN were to oversee and direct the development of the software and other technical aspects of the E-Commerce Platform, while KGK NY was to provide the generic jewelry that each retailer could self-brand, fund the software and product development, and manage the sales force and marketing activities necessary to promote the Platform.  (Id. ¶ 34.)  KGK NY was also supposed to create, and begin hosting and offering for sale as part of the E-Commerce Platform, a "virtual catalog" of all of the KGK NY generic merchandise that retailers could sell through the Platform.  (Id.)  The parties began complying with their respective obligations under the agreement in early 2010.  (Id. ¶ 35.) Yeko made it clear to KGK NY and KGK Global that the E-Commerce Platform would require significant funding, and KGK NY representatives acknowledged these costs and assured Yeko that they would be paid by KGK NY.  (Id.)

The prototype for the E-Commerce Platform was introduced in July 2010, and the parties continued working together into 2011, during which time Plaintiffs kept KGK NY informed of development costs, which were running between $150,000 and $250,000 per month. (Id. ¶¶ 36-37.)  Some 70 jewelry retailers registered for the E-Commerce Platform but, as soon

as the Platform began to succeed, the KGK Defendants sought to undermine it and refused to compensate AGQA and ESDN for the costs that they had incurred.  (SAC ¶¶ 39-43.)  The SAC alleges, <u>inter alia</u>, that KGK NY failed to provide the jewelry items requested to the 70 retail stores, to provide usable data to AGQA/ESDN in connection with the "virtual catalogue" of merchandise, to provide back office and other support, to properly and lawfully compensate employees, and to properly deploy or pay for a sweepstakes.  (<u>Id.</u> ¶¶ 44-50.)  Plaintiffs further allege that KGK NY overcharged the jewelry store retailers for the generic merchandise that it sold to them and that most, if not all, of the 70 retailers who originally registered for the E-Commerce Platform have since sent back their merchandise and cancelled or attempted to cancel their contracts.  (<u>Id.</u> ¶¶ 51-52.)

Bloom was put in charge of KGK NY's E-Commerce Platform despite his prior criminal conviction for fraud (he was convicted of overstating the value of jewelry that he owned to obtain a multi-million dollar credit line), and he committed a similar fraud in this case by systematically and intentionally "bumping up" the grades of diamonds coming from KGK NY's Hong Kong factories.  (<u>Id.</u> ¶¶ 53-54.)  By inflating the diamonds' grades, Plaintiffs allege, Bloom exposed AGQA to liability because the false grades were put on the AGQA certification cards that were sold with the jewelry, in which AGQA agreed to compensate customers for any inaccurately graded jewelry.  (<u>Id.</u>)  KGK NY and Flyer Jewelry entered into an agreement with AGQA to use the certification cards in conjunction with the E-Commerce Platform but did not pay the associated fees.  (<u>Id.</u> ¶¶ 86-90.)

By early 2012, the relationship between the parties had deteriorated.  Yeko and Kothari agreed to meet in early 2012, in New York, in an attempt to resolve their differences, but Kothari cancelled the meeting without explanation and stated that he was not willing to pay

Plaintiffs what they alleged was due to them.  (SAC ¶ 57.)  KGK NY and other named Defendants sought to blame the failure of the E-Commerce Platform on Yeko, AGQA and ESDN, both during the course of the parties' business relationship and thereafter.  (Id. ¶¶ 60-61.) In December 2011, KGK NY hired Thorpe, who was one of Yeko's key employees and confidants, to duplicate the in-store kiosk system that Thorpe had overseen at AGQA/ESDN because KGK NY sought to replace the in-store kiosk systems with a less robust system, in order to "pin the blame for KGK [NY]'s myriad failures on Yeko, AGQA and ESDN."  (Id. ¶ 59.) Plaintiffs further contend that, among various defamatory statements made by the Moving Defendants, Kaufman sent a letter to jewelry store retailers designed to undermine the work of AGQA and ESDN, and Hecht sent a letter to them implying that service interruptions in the E-Commerce Platform were caused by AGQA and ESDN, thus damaging AGQA and ESDN's reputation by suggesting that they were hired only as third-party laborers.  (Id. ¶ 98, 102.) According to Plaintiffs, KGK NY also reported to an industry publication that TDC was delinquent in paying for the generic jewelry that KGK NY had supplied when KGK NY knew that the jewelry was overpriced and fraudulently graded.  (Id. ¶ 62.)

The SAC asserts eleven Causes of Action: (i) a breach of contract claim by ESDN against KGK NY (First Cause of Action); (ii) a breach of contract claim by AGQA against KGK NY (Second Cause of Action); (iii) a breach of contract claim by TDC against KGK NY (Third Cause of Action); (iv) a fraud claim by AGQA and TDC against KGK NY, KGK Global and Bloom (Fourth Cause of Action); (v) a breach of contract claim by AGQA against KGK NY and Flyer Jewelry (Fifth Cause of Action); (vi) a fraudulent inducement claim by all of the Plaintiffs against Kothari, Bloom, Hostrup, Sahoo and KGK NY (Sixth Cause of Action); (vii) a defamation claim by all of the Plaintiffs against KGK NY, Kothari, Bloom, Hostrup, Flyer

Jewelry, Kaufman and Hecht (Seventh Cause of Action); (viii) unjust enrichment and <u>quantum</u> <u>meruit</u> claims by ESDN and AGQA against KGK NY, KGK Global, Flyer Jewelry and Bloom (Eighth Cause of Action); (ix) deceptive business practices and false advertising claims by AGQA and TDC against KGK NY, KGK Global and Bloom (Ninth Cause of Action); (x) tortious interference with contract and with prospective business relations and economic advantage claims by AGQA and ESDN against Kothari, KGK, Bloom, Flyer Jewelry, Hostrup, Kaufman, Hecht and Sahoo (Tenth Cause of Action); and (xi) a breach of fiduciary duty claim by AGQA against Thorpe (Eleventh Cause of Action).

<u>DISCUSSION</u>

The pending motions are brought pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.  Under Federal Rule of Civil Procedure 12(b)(2), dismissal is appropriate if the court does not have personal jurisdiction over the defendant.  "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss," <u>Whitaker v. Am. Telecasting. Inc.</u>, 261 F.3d 196, 208 (2d Cir. 2001), but the plaintiff  "'need only make a <u>prima</u> <u>facie</u> showing that jurisdiction exists prior to the holding of an evidentiary hearing,'" <u>Capitol Records, LLC v. VideoEgg, Inc.</u>, 611 F. Supp. 2d 349, 356 (S.D.N.Y. 2009) (quoting <u>Ball v. Metallurgie Hoboken–Overpelt, S.A.</u>, 902 F.2d 194, 196 (2d Cir. 1990)).

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v.</u> <u>Twombly</u>, 550 U.S. 544, 570 (2007)).  A pleading that offers "labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at

555.  However, to plead a claim for fraud, a plaintiff must "state with particularity the

circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), a

complaint must: "(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent."  Nakahata v. New York–Presbyterian Healthcare System, Inc.,

723 F.3d 192, 197-98 (2d Cir. 2013) (internal quotation marks and citation omitted).


Defendant Thorpe's Motion to Dismiss

            Plaintiffs assert one claim against Thorpe in the SAC, for breach of fiduciary duty

(Eleventh Cause of Action).  They allege that KGK NY hired Thorpe "for the specific purpose of

duplicating the in-store kiosk system over which Thorpe had overseen development at AGQA

and to help hack into the in-store kiosks that ESDN had paid for and set up at over 50 retail

locations in order to replace them with a software system that relied on and used the database

created by the Plaintiffs at enormous expense, but which KGK admitted was far less robust . . .

[and which] served – and was intended to serve – to improperly pin the blame for KGK's myriad

failures on Yeko, AGQA and ESDN."  (SAC ¶ 59.)  This count is asserted broadly as a breach of

fiduciary duty claim: "Thorpe owed [AGQA] certain fiduciary duties, including good faith and

loyalty, which in turn included a duty not to interfere with [AGQA's] business or divert business

opportunities for one's own benefit . . . Thorpe breached his fiduciary duty to [AGQA] by,

among other things, diverting business opportunities with KGK NY and Allen Bloom away from

[AGQA] and toward him for his own personal benefit."  (Id. ¶¶ 124-25.)  Thorpe moves to

dismiss the complaint, arguing that Plaintiffs do not have jurisdiction over him, and that

plaintiffs fail to state a claim against him.  Thorpe also requests attorneys' fees and costs under 28 U.S.C. § 1927, arguing that Defendants submitted opposition papers that were recycled from a separate case in bad faith and that Plaintiffs' claim for breach of fiduciary duty is frivolous and vexatious.

The SAC identifies Thorpe as a resident of Missouri, and alleges that KGK NY hired him to duplicate ACQA's in-store kiosk system and help "hack into" in-store kiosks that had been paid for and installed by ESDN to replace their software systems.  (SAC ¶¶ 18, 59.)  In support of his motion to dismiss the complaint for lack of personal jurisdiction, Thorpe has proffered an affidavit in which he confirms that he is a Missouri resident, asserts that he has no place of business, office, telephone, mailing address, or real property in New York, and denies that he has advertised, marketed or solicited business in New York.  He admits to having visited KGK NY in his capacity as an employee of ACQA/ESDN at Yeko's direction to address technical issues, and to having made three other trips to New York between November and December 2011 on a project that he alleges was unrelated to the claim asserted against him in the SAC.  He further alleges that all of his work for KGK was carried out from his home in Missouri as an independent contractor, denies that he was aware of the physical locations of the KGK NY customers whose kiosks would utilize his system, and denies hacking into any kiosks.  (See generally Declaration of John Thorpe ("Thorpe Decl.")).

In opposition to the motion, Plaintiffs filed an affidavit and memorandum of law from another, related case.  The filings, which were not revised to respond to the assertions in Thorpe's affidavit, nor even to refer to the allegations of the SAC (indeed, the memorandum of law discusses extensively allegations and testimony that had been proffered in the other case but are not part of the record before this Court), do not refute any of Thorpe's material allegations.

Nor do they add any facts pertinent to the personal jurisdiction issue in this case, other than a conclusory assertion that "Thorpe was fully aware that the jointly created KGK-Thorpe kiosk system would be placed at [five specified] New York Retailers and that his work on that system would directly result in . . . [Plaintiffs'] losses and [Defendants'] unjust gains."  (Declaration of Steve Yeko ("Yeko Decl."), filed as Attachment 1 to ECF docket entry no. 53, at ¶ 5.)

   To determine whether there is a basis to exercise personal jurisdiction over a defendant under Federal Rule of Civil Procedure 12(b)(2), "[f]irst, the court must determine if New York law would confer upon its courts the jurisdiction to reach the defendant . . . [and] [i]f there is a statutory basis for jurisdiction, the court must then determine whether New York's extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment."  See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002).  The court may consider both the pleadings and sworn affidavits.  See CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986).  When a motion is brought under Federal Rule of Civil Procedure 12(b)(2) without a hearing or jurisdictional discovery, the plaintiff has the burden of making a prima facie showing of proper grounds for the court's exercise of personal jurisdiction, see Whitaker, 261 F.3d at 208, but "the pleadings and affidavits are construed, and any ambiguity is resolved, in favor of the plaintiff." Taylor Devices, Inc. v. Walbridge Aldinger Co., 538 F. Supp. 2d 560, 575 (W.D.N.Y. 2008) (internal citation omitted).


   General Jurisdiction Under N.Y. C.P.L.R. § 301

   Under New York law, to establish personal jurisdiction over a defendant, a plaintiff must "demonstrate either that [the defendant] was present and doing business in New

York within the meaning of [CPLR] § 301, or that [the defendant] committed acts within the scope of New York's long-arm statute, CPLR § 302."  Schultz v. Safra Nat. Bank of New York, 377 F. App'x 101, 102 (2d Cir. 2010) (internal quotation marks and citation omitted).  Under C.P.L.R. § 301, a non-domiciliary is subject to personal jurisdiction in New York "with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." Overseas Media, Inc. v. Skvortsov and OOO Fenix Film, 407 F. Supp. 2d 563, 567 (S.D.N.Y. 2006) (internal quotation marks and citations omitted).  Neither the SAC nor the refiled Yeko affidavit proffers any facts that could support a determination that Thorpe is, or was at any pertinent time, doing business in New York within the meaning of C.P.L.R. § 301 as a general matter.


Specific Jurisdiction Under C.P.L.R. § 302

Personal jurisdiction over a non-domiciliary can also be satisfied by any of the acts enumerated in New York's long-arm jurisdiction statute, N.Y. C.P.L.R. § 302.  Section 302 provides in relevant part that:

> (a) [A] court may exercise personal jurisdiction over any non-domiciliary [who] 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . .; or 3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ."

N.Y. C.P.L.R. § 302 (McKinney 2010).  Thorpe contends that, on the record before the Court,

there is no basis to exercise specific jurisdiction over him under any of the provisions of

C.P.L.R. § 302.  The Court agrees.[4]

Under section 302(a)(1), "long-arm jurisdiction over a nondomiciliary exists

where (i) a defendant transacted business within the state and (ii) the cause of action arose from

that transaction of business.  If either prong of the statute is not met, jurisdiction cannot be

conferred . . . ."  Johnson v. Ward, 4 N.Y.3d 516, 519 (2005).  In this Circuit, "the following

factors are considered in determining whether an out-of-state defendant transacts business in

New York: (i) whether the defendant has an ongoing contractual relationship with a New York

corporation; (ii) whether the contract was negotiated or executed in New York and whether, after

executing a contract with a New York business, the defendant has visited New York for the

purpose of meeting with parties to the contract regarding this relationship; (iii) what the

choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to

send notices and payments into the forum state or subjects them to supervision by the

corporation in the forum state.  No single factor is dispositive, and other factors may be

considered."  Agency Rent A Car System, Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d

Cir. 1996) (internal quotation marks and citations omitted).

Plaintiffs have proffered no affidavits or pleadings in this case that, construed in

the light most favorable to them, would provide a proper basis for the exercise of personal

---

[4]    To the extent that Plaintiffs argue, as they did in the related case, that the Court has
personal jurisdiction over Thorpe as an agent of KGK NY under § 302 because
Thorpe acted in concert with KGK NY, a New York entity, their argument fails for
substantially the reasons stated in Judge Carter's March 26, 2013, Opinion and
Order in the related case, namely because the SAC fails to allege adequately any
agency relationship or conspiracy claim.  See Accurate Grading Quality Assur., Inc.
v. Thorpe, No. 12 CV 1343 (ALC), 2013 WL 1234836, at *3 (S.D.N.Y. Mar. 26,
2013).

jurisdiction under C.P.L.R. § 302(a)(1).  The SAC alleges that KGK NY hired Thorpe to "help

hack into" in-store kiosks that, in the affidavit recycled from the related case, Plaintiffs claim

Thorpe knew included kiosks located in New York.  These allegations are insufficient to state a

prima facie case that Thorpe actually transacted business in New York.  Furthermore, in his

uncontroverted affidavit, Thorpe asserts that the development of his kiosk system for KGK NY

was a limited project that he carried out from his home in Missouri as an independent contractor;

that it did not involve supplying equipment or software to any other state; and that it was not part

of an ongoing relationship between Thorpe and KGK NY.  (Thorpe Decl. ¶¶ 8, 21-22, 27, 30-

32.)  Thorpe also states that he did not sign, or negotiate any agreement that was later signed

with AGQA and/or ESDN, in New York.  (See id. ¶ 23.)

       C.P.L.R. § 302(a)(2) provides that a court can exercise personal jurisdiction over

any non-domiciliary who, in person or through an agent, commits a tortious act within the state.

However, there is no jurisdiction under this provision if the plaintiff  "fail[s] to allege that

[defendant] or his agents committed a tortious act [while physically present in New York] as

required for exercise of personal jurisdiction under [this provision]."  Overseas Media, 407 F.

Supp. 2d at 572 (alteration in original and internal quotation marks and citation omitted).

Thorpe has submitted a sworn declaration stating that he has never logged into a kiosk that was

run by any of the retailers participating in KGK NY's marketing program nor did he use any

technique or suggest any technique to anyone to log in or "hack" into a kiosk in New York.

(Thorpe Decl. ¶ 34.)  Plaintiffs have not offered any evidence or pleaded any facts indicative of

his commission of any tort while present in New York.

       C.P.L.R. § 302(a)(3) provides two grounds for jurisdiction when the plaintiff has

been injured in New York as a result of the defendant's out-of-state tortious act.  A plaintiff must

allege that: (1) a tortious act was committed outside New York; (2) a cause of action arises from

the act; (3) the act caused injury to a person in New York; and (4) the defendant "(i) regularly

does or solicits business, or engages in any other persistent course of conduct, or derives

substantial revenue from goods used or consumed or services rendered, in the state, or (ii)

expects or should reasonably expect the act to have consequences in the state and derives

substantial revenue from interstate or international commerce . . . ."  N.Y. C.P.L.R. § 302(a)(3)

(McKinney 2010).  There is no basis in this record to conclude that Thorpe had sufficient

contacts with New York for jurisdiction under this provision.  Plaintiffs have not alleged that

Thorpe regularly does or solicits business in New York, or derives substantial revenue from

business in New York.  Neither have they alleged facts that, taken as true, would establish that

Thorpe expected or reasonably should have expected his actions to have consequences in the

state.  See Ingraham v. Carrol, 90 N.Y. 2d 592, 597 (1997) (explaining jurisdiction under

C.P.L.R. §§ 302(a)(3)(i) and (ii)).  Thorpe attests that he does business almost exclusively in

Missouri and has very limited contacts with New York – all of which are unrelated to Plaintiffs'

claims – and that he does not derive any revenue, much less substantial revenue, from goods

used or consumed or services rendered in New York.  (Thorpe Decl. ¶ 2-4, 10.)  Accordingly, the

Court finds that Plaintiffs have not met their burden of establishing a prima facie case for the

exercise of personal jurisdiction over Thorpe and grants Thorpe's motion to dismiss the SAC for

lack of personal jurisdiction.

### Attorneys' Fees and Costs

Thorpe invokes 28 U.S.C. § 1927 and the Court's inherent authority, seeking an

award of attorney's fees and costs against Plaintiffs and their counsel.  Under section 1927, any

attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C.S. § 1927 (LexisNexis 2003).  "Section 1927 authorizes the imposition of sanctions only when there is a finding of conduct constituting or akin to bad faith."  State Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004) (internal quotation marks and citation omitted).  A court must find that the challenged claim was (i) "without a colorable basis" and (ii) "brought in bad faith, i.e., motivated by improper purposes such as harassment or delay."  Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012) (internal quotation marks omitted).  See also Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000) (holding that, "[t]o impose sanctions under [the court's inherent authority or section 1927], the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." (internal quotation marks and citation omitted)).

Thorpe principally asserts that Plaintiffs' opposition papers are the same papers filed in the Accurate Grading Quality Assur., Inc. v. Thorpe action and thus are not responsive to the instant motion and, further, that forcing Thorpe to argue for a second time that the Court cannot assert personal jurisdiction over him was unreasonable and vexatious.  (Thorpe Reply Mem. pp. 4, 10.)  Although using recycled briefing papers does not reflect highly on Plaintiffs, particularly Plaintiffs' counsel, the re-use of these papers, which were generally pertinent to the issue of whether there was a proper basis for this Court's exercise of jurisdiction over Thorpe, did not amount to the presentation of an entirely frivolous argument or indicate action taken in bad faith.  Therefore, the Court denies Thorpe's request for attorneys' fees and costs.

Moving Defendants' Rule 12(b)(6) Motion to Dismiss[5]

### First Cause of Action – Breach of Contract: ESDN against KGK NY

The SAC describes the agreement between the parties as one under which "KGK would [, inter alia,] be the main provider of the generic jewelry that each jewelry retailer could self-brand, would fund the software and other product development . . ., would fund the technical support . . ., and would engage the sales force and marketing activities necessary to promote the E-Commerce Platform to individual retailers." (SAC ¶ 34.) According to Plaintiffs, "[t]he parties agreed to those essential terms in 2010, and both proceeded to perform their respective obligations accordingly." (Id. ¶ 35.) They further allege that Yeko consistently communicated to KGK's representatives that the undertakings were extensive and would be expensive, and that the representatives "from the beginning . . . acknowledged these costs and assured Yeko that they would be paid by KGK NY." (Id.) Plaintiffs allege that KGK NY breached the agreement by, inter alia, failing to pay monies owed and inflating the grades reported for diamonds supplied to retailers through the E-Commerce program. (See id. ¶ 7.) Defendants move to dismiss, arguing that SAC's allegations are too conclusory.

To state a claim for breach of contract based on New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund Ltd. v. Select Portfolio Servicing Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting Harsco

---

[5] To the extent that Plaintiffs cite to the original complaint in their briefing for this motion, the Court disregards those citations and focuses only on what is set forth in the SAC. "[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." Dluhos v. Floating & Abandoned Vessel, Known as N.Y., 162 F.3d 63, 68 (2d Cir. 1998) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

Corp. v. Segui, 91 F.3d 337, 348 (2d Cir.1996)).  "A breach of contract claim will withstand a

motion to dismiss only if plaintiff allege[s] the essential terms of the parties' purported contract

in nonconclusory language, including the specific provisions of the contract upon which liability

is predicated."  Broughel v. Battery Conservancy, No. 07 CV 7755 (GBD), 2009 WL 928280, at

*5 (S.D.N.Y. Mar. 30, 2009) (internal quotation marks and citation omitted).  However, it "is not

necessary for each element [of the breach of contract claim] to be pleaded individually."

Berman v. Sugo LLC, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

          Here, the SAC describes the formation of the original agreement between the

parties, and how the parties agreed to the essential terms of the agreement in 2010, and relates

discussions and steps taken in connection with performance of the contract.  It also identifies

conduct allegedly constituting breaches of the obligations described in the SAC.  Plaintiffs

further outline the division of labor under the parties' purported agreement and specific

obligations of KGK NY.  Plaintiffs allege that, while they complied with the parties' agreement,

KGK NY failed to provide the money and services it had promised and fraudulently inflated the

grades of the jewelry it did provide under the agreement, thus causing Plaintiffs to suffer

damages.  The Court finds that the Plaintiffs' "allegations, while they may not be sufficient to

prove that a breach of contract occurred," "nudg[e] [ESDN's] contract claim into the realm of

plausibility, and [that] it would therefore be inappropriate for the Court to dismiss the claim at

this stage."  Dumont v. Litton Loan Servicing, LP, No. 12 CV 2677 (ER)(LMS), 2014 WL

815244, at *6 (S.D.N.Y. 2014).[6]  The motion to dismiss is denied insofar as it is addressed to the

---

[6]       The Moving Defendants argue that the only written contracts governing the Marketing
Agreement between the parties where the parties' mutual assent is evident are certain
October 2011 contracts (see Declaration of Peter Raymond ("Raymond Decl."), Ex.
A), but Plaintiffs make no claims in this case for breach of the October 2011
contracts.  The October 2011 contracts are not properly considered at this juncture

First Cause of Action.

### Second Cause of Action – Breach of Contract: AGQA against KGK NY

Plaintiffs also assert a breach of contract claim based on an alleged agreement between AGQA and KGK NY, under which KGK NY was to pay AGQA in exchange for the right to print and issue certification cards in connection with the E-Commerce Platform. Plaintiffs contend that KGK NY breached this agreement by fraudulently grading the jewelry that was certified by the cards, thus exposing AGQA to liability and tarnishing its reputation. (See SAC ¶¶ 71-76.)  In their opposition to the motion to dismiss, Plaintiffs clarify that the alleged agreement between the parties was written and thus is not subject to the Statute of Frauds.  (See Pl. Mem. in Opp. at 8.)  Plaintiffs contend that this agreement, which they refer to as the "authorized party" agreement, had specific terms requiring that information printed on AGQA certification cards be printed in good faith and consistent with industry standards. According to Plaintiffs, AGQA has lost significant business as a result of KGK NY's breach and has been exposed to a continuing prospect of liability because much of the jewelry remains on store shelves around the country today.  (Id.)  The Court finds that Plaintiffs have sufficiently alleged that there was a contract between the parties, that KGK NY breached it and that they suffered damages.  The motion to dismiss is denied insofar as it is addressed to the Second Cause of Action.

---

as Plaintiffs do not refer to them in the SAC nor do they appear to be integral to the complaint.  See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (on a 12(b)(6) motion to dismiss, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference" or any documents "integral" to the complaint) (internal quotation marks and citation omitted).

Third Cause of Action – Breach of Contract: TDC against KGK NY

TDC asserts a breach of contract claim against KGK NY.  (SAC ¶ 80.)  TDC was one of the 70 retail store customers of KGK participating in the Marketing Program and had entered into a written contract with KGK NY.  (Id. ¶¶ 78-80.)  This contract is not attached to the SAC, but is referred to therein.  (Id. ¶¶ 41, 78.)  The Moving Defendants have submitted a copy and both parties agree that the contract is properly before the Court on this motion.  (See Raymond Decl., Ex. I; see also Pl. Mem. in Opp. at 9, n. 5.)  The contract governs the parties' obligations, including KGK NY's obligation to provide marketing support and hardware as well as the KGK jewelry.  (Raymond Decl., Ex. I)  Plaintiffs allege that KGK NY breached its agreement with TDC by failing to provide "support and hardware," failing to timely deliver merchandise, and failing to provide personalized in-store displays, "duratrans," lookbooks, postcards and other promotional materials, in-store events, the "SPIFF salesperson incentive program," television commercials or a sweepstakes and that, consequently, Plaintiffs suffered damages.  (See SAC ¶¶  44, 80.)  Plaintiffs also allege that KGK NY breached its obligations by fraudulently grading jewelry sold to TDC.  According to the Moving Defendants, the contract cannot govern this claim because it is silent on diamond grading.  (See Def. Mem in Supp. of Mot. at pp. 11-12.)  However, the obligation to grade the jewelry in good faith inheres in the language of the contract itself, which implies that, when KGK committed to providing certification cards, it committed to providing accurate grades.  See, e.g., Beninatti v. FDIC, 55 F. Supp. 2d 141, 148 (E.D.N.Y. 1999) ("New York case law defines the duty of good faith and fair dealing as an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract") (internal quotation marks and citations omitted).

According to Defendants, Plaintiffs have also failed to show that TDC suffered damages as a result of KGK NY's breach of contract claim, because Plaintiffs allege that TDC was reported "as delinquent in paying for the jewelry that KGK NY sent [TDC] in connection with it being one of the retailers participating in the Marketing Program/E-Commerce Platform." (SAC ¶ 62.)  This paragraph does not state that TDC did not suffer damages nor that TDC never paid for any of the jewelry and, elsewhere in the SAC, Plaintiffs allege that TDC was overcharged.  (Id. ¶ 51.)  Accordingly, the Court finds that Plaintiffs have sufficiently alleged the specific terms of the contract, the purported breaches and damages so as to defeat the Moving Defendants' motion to dismiss the Third Cause of Action.

Fifth Cause of Action – Breach of Contract: AGQA against KGK NY and Flyer Jewelry

AGQA sues KGK NY and Flyer Jewelry for breaching their agreements with AGQA by failing to pay fees for the AGQA certification cards.  (See SAC ¶¶ 87-89.)  Plaintiffs argue that clients who had the privilege of printing and issuing the AGQA cards were obligated to pay certain fees under a contract that they entered into with AGQA and that KGK NY and Flyer Jewelry failed to pay those fees.  (Id.)  Plaintiffs further allege that they have suffered damages in the amount of approximately $72,000.  (Id. ¶ 90.)  The Moving Defendants argue that merely alleging the non-payment of invoices is not sufficient to show mutual assent to a contract.  However, the SAC alleges that the parties consensually entered into an agreement and, on a motion to dismiss, a plaintiff need only plead the existence of an agreement, performance by the plaintiff, breach and damages.  See, e.g., LBBW Luxemburg S.A. v. Wells Fargo Securities LLC, No. 12 CV 7311 (JPO), 2014 WL 1303133, at *6 (S.D.N.Y. Mar. 31, 2014) (citing First Investors Corp. v. Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir.1998)).

Plaintiffs here have sufficiently alleged that the Moving Defendants were required to pay for the certification cards, that they did not pay all of the associated fees and thus, that they breached the agreement between the parties, causing Plaintiffs to suffer damages.  Accordingly, the Court also denies the Moving Defendants' motion insofar as it is directed to the Fifth Cause of Action.

Fourth Cause of Action – Fraud: AGQA and TDC against KGK NY, KGK Global and Bloom

Defendants move to dismiss Plaintiffs' fraud claims (the Fourth and Sixth Causes of Action), arguing that Plaintiffs have failed to satisfy the particularized pleading requirement of Federal Rule of Civil Procedure 9(b).  See Fed. R. Civ. P. 9(b) (plaintiff must "state with particularity the circumstances constituting fraud or mistake").  "Under New York law, in order to survive a motion to dismiss, a plaintiff asserting a fraud claim must plead facts sufficient to establish the following elements: (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[ ] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss[.]"  Grimes v. Freemont General Corp., No. 08 CV 1024 (KMK), 2013 WL 1187474, at *12-13 (S.D.N.Y. Mar. 22, 2013) (internal quotation marks and citation omitted, alterations in original).  "To satisfy the pleading requirements of Rule 9(b), a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Wood v. Applied Research Assocs. Inc., 328 F. App'x 744, 747 (2d Cir. 2009) (internal quotation marks and citation omitted).  Moreover, allegations of fraud "must provide facts 'that give rise to a strong inference of

fraudulent intent.'"  <u>Int'l Bus. Machines Corp. v. Dale</u>, No. 11 CV 951 (VB), 2011 WL 4012399, at *3 (S.D.N.Y. Sept. 9, 2011) (quoting <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. 2009).

        In their Fourth Cause of Action, Plaintiffs assert that KGK NY, KGK Global and Bloom knowingly and intentionally misled AGQA and TDC by assigning false grades to the KGK merchandise sold through the E-Commerce Platform, including merchandise sold to TDC. (SAC ¶ 83.)  As the Moving Defendants point out, the SAC proffers no facts indicative of knowing and intentional inflation of the gem grades, and fails to provide any specificity as to the circumstances under which such grading purportedly occurred.  Plaintiffs do not justify or explain this failure; instead, they assert conclusorily that "Defendants made false statements of these material facts as a matter of plan and routine" and that "Defendants' systematic diamond-grading fraud led to, significant lost business and the continuing threat of future liability."  (Pl. Mem. in Opp. at 9.)  Such allegations are insufficient to satisfy the particularized fraud pleading requirements of Federal Rule of Civil Procedure 9(b).  Accordingly, Defendants' motion is granted as to the Fourth Cause of Action.

        <u>Sixth Cause of Action – Fraudulent Inducement: Plaintiffs against Kothari, Bloom, Hostrup, Sahoo and KGK NY</u>

        Plaintiffs' Sixth Cause of Action is similarly deficient.  In it, Plaintiffs appear to assert fraudulent inducement claims by ESDN and TDC (although all Plaintiffs are referenced in the heading in the SAC) against Kothari, Bloom, Hostrup, Sahoo and KGK NY, arguing that the Defendants "made repeated statements, both before and during the parties' contractual relationship, to the effect that KGK NY was competent to move forward with the E-Commerce Platform and that it intended to commit the financial and human resources necessary to see the

project through, despite . . . knowing or showing a reckless disregard for the fact that these

statements were false when made, and for the purpose of inducing the Plaintiffs to commit their

own resources."  (See SAC ¶ 92.)  The Moving Defendants argue that this count should be

dismissed because it fails to satisfy Rule 9(b)'s particularity requirement.

   Under New York law, an action for fraudulent inducement requires the

demonstration of: "(1) a material misrepresentation or omission that induced the party to sign the

contract; (2) scienter; (3) reliance; and (4) injury."  Davidowitz v. Partridge, No. 08 CV 6962

(NRB), 2010 WL 5186803, at *7 (S.D.N.Y. Dec. 7, 2010).  Under Rule 9(b), claims for

fraudulent inducement must be "state[d] with particularity."  The SAC does not offer any

specificity with regard to the circumstances under which Plaintiffs were fraudulently induced to

enter into contracts with the Defendants or as to the scienter of the Defendants.  Accordingly, the

Court grants the Moving Defendants' motion to dismiss the Sixth Cause of Action.

   Seventh Cause of Action – Defamation: Plaintiffs against KGK NY, Kothari,
Bloom, Hostrup, Flyer Jewelry, Kaufman and Hecht

   Under New York law, a plaintiff must plead four elements to state a defamation

claim: "(1) a false statement, (2) publication without privilege or authorization to a third party,

(3) by at least a negligence standard of fault and (4) the statement either causes special damages

or constitutes defamation per se."  Matthews v. Malkus, 377 F. Supp. 2d 350, 357 (S.D.N.Y.

2005) (internal quotation marks and citations omitted).  Plaintiffs allege that certain statements

constitute defamation per se.  (SAC ¶ 105.)  According to Plaintiffs, the Defendants engaged,

beginning in late 2011, in a concerted effort to cover up their failings and, to do so, they

intentionally "spread known falsehoods about the Plaintiffs in order to undermine their

credibility and pin all the blame on them," deflecting attention from the alleged failings of KGK

NY and/or Martin Flyer.  (SAC ¶¶ 96-97.)  Plaintiffs claim, inter alia, that: (1) Kaufman's

statement as the CEO of Martin Flyer that, "[t]o help provide ecommerce solutions for our

[KGK] customers, we worked with a third-party provider, ESDN," was false because KGK had

no retail customers before AGQA and ESDN created the E-Commerce Platform and this

statement undermined AGQA's and ESDN's potential for advancement in the e-commerce

business (¶ 98); (2) Kaufman's statement that "the model that was created was not executed the

way [Flyer Jewelry] was originally told it would be" was false because it implied that ESDN

failed to deliver the services that it agreed to provide (¶ 99); (3) Kaufman's statements that

ESDN had "disconnected [Flyer Jewelry's]" access to the "shop now" portal and that Flyer

Jewelry was "eager to have our new ecommerce site working in the next 90 days," falsely

implied that the E-Commerce Platform was a simple product that could be easily and quickly

duplicated, which was not true (¶¶ 99, 100-01); and (4) Hecht's references to "two service

interruptions in 2011 and 2012" falsely implied that the interruptions in service were caused by

AGQA or ESDN.  (Id. ¶ 102.)  According to Plaintiffs, these statements were generally intended

to suggest that "Plaintiffs did not do their jobs properly and were not competent."  (Pl. Mem. in

Opp. at 11.)  Plaintiffs further allege that Defendants made other statements, the precise details

of which are not in the possession of Plaintiffs but which can be acquired through further

discovery.  (See id. ¶ 104.)  Plaintiffs assert that these statements constitute defamation per se.

        "Determining whether a statement is defamatory per se is a question of law for

the Court."  Stern v. Cosby, 645 F. Supp. 2d 258, 288 (S.D.N.Y. 2009).  Statements that are

defamatory per se are actionable without pleading and proof of special damages.  Boehner v.

Heise, 734 F. Supp. 2d 389, 398 (S.D.N.Y. 2010).  The four categories of statements that

constitute defamation per se are statements: "(1) charging plaintiff with a serious crime; (2) that

tend to injure another in his or her trade, business or profession; (3) that plaintiff has a loathsome disease; or (4) imputing unchastity to a woman." Epifani v. Johnson, 65 A.D.3d 224, 234, 882 N.Y.S.2d 234 (2d Dep't 2009) (citation omitted).  The only category relevant here is the second one.

   "To survive a motion to dismiss a defamation claim, a plaintiff must identif[y] the purported communication, and [indicate] who made the communication, when it was made, and to whom it was communicated." Elcan Industries, Inc. v. Cuccolini, S.R.L., No. 13 CV 4058 (GBD) (DF), 2014 WL 1173343, at *9 (S.D.N.Y. Mar. 21, 2014) (internal quotation marks and citations omitted, alterations in original).  Plaintiffs are "bound by the alleged defamatory words contained in the four corners of the complaint." Sandler v. Simoes, 609 F. Supp. 2d 293, 301 (E.D.N.Y. 2009) (internal quotation marks and citation omitted).  "In evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction." See Dillon v. City of New York, 704 N.Y.S. 2d 1, 5 (1st Dep't 1999) (internal citation omitted).

   The statements identified in the SAC do not, on their face, have defamatory meaning such that they would "tend to injure another in his or her trade, business or profession" in a manner sufficient to support an action for defamation per se.  Stern, 645 F. Supp. 2d at 272. For a statement to qualify as defamation per se in the context of injury to business, it "must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities . . . [and] [t]he allegedly defamatory statement must be targeted at the specific standards of

performance relevant to the plaintiff's business and must impute conduct that is of a kind incompatible with the proper conduct of the business, trade, profession or office itself." Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (internal quotation marks and citations omitted) (holding that statements made by defendant did not constitute defamation per se because they did "not impute fraud or misconduct to [plaintiff], nor [did] they suggest a general unfitness, incapacity, or inability [of plaintiff] to perform her duties"); accord Van–Go Transp. Co. Inc. v. New York City Bd. of Educ., 971 F. Supp. 90, 98 (E.D.N.Y.1997) ("[r]eputational injury to a person's business, or to a company, consists of a statement that either imputes some form of fraud or misconduct or a general unfitness, incapacity, or inability to perform one's duties").

       The Court cannot conclude that the average person hearing or reading the communications alleged in the SAC would interpret them in the manner that Plaintiffs do, or would form an unfavorable opinion of Plaintiffs as a result of hearing or reading them.  The statements recounted by Plaintiffs in the SAC may well have been false.  However, they at most seem to imply that Plaintiffs did not meet Defendants' expectations with regard to the creation and rollout of the E-Commerce Platform, and statements evincing a general dissatisfaction with job performance do not qualify as defamation per se.  See Aronson v. Wiersma, 65 N.Y. 2d 592, 593-94 (1985).  The statements do not suggest fraud or misconduct on the part of the Plaintiffs, and they fail to rise to the level of  "imput[ing] conduct that is of a kind incompatible with the proper conduct of the business . . . itself." Pure Power Boot Camp, 813 F. Supp. 2d at 550.  Nor does the Court conclude that an average person hearing or reading the statements would understand them to "suggest a general unfitness, incapacity, or inability [of the Plaintiffs] to perform [their] duties."  Id.  Thus, the statements marshaled by the Plaintiffs in the SAC do not

qualify as defamation per se in the context of injury to business or trade.

Plaintiffs' attempts to premise their defamation claim on statements not specified in the SAC are also unavailing, as the instant pleading must stand or fall on its actual content. Moreover, Plaintiffs cannot successfully defend their pleading as one charging ordinary defamation, because they have not pleaded special damages: the SAC makes only the conclusory allegation that "[e]ach of the Plaintiffs has suffered individualized actual and special damages to their respective reputations." (See SAC ¶ 106.) Accordingly, the Court grants the Moving Defendants' motion to dismiss the Seventh Cause of Action.

Eighth Cause of Action – Unjust Enrichment/Quantum Meruit: ESDN and AGQA against KGK NY, KGK Global, Flyer Jewelry and Bloom

ESDN and AGQA also assert an unjust enrichment and quantum meruit claim against KGK NY, KGK Group, Flyer Jewelry and Bloom, claiming that they provided goods and services in good faith to Defendants, who were unjustly enriched thereby. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." Briarpatch Ltd., LP v. Phoenix Pictures, Inc., 373 F.3d 296, 306 (2d Cir. 2004). "Except where there is a bona fide dispute as to the existence of a contract or where the contract does not cover the dispute in issue . . . [t]he law is well-settled that a contract cannot be implied in fact when there is an express contract governing the subject matter involved." Sugerman v. MCY Music World, Inc., 158 F. Supp. 2d 316, 326 (S.D.N.Y. 2001) (internal quotation marks and citations omitted). However, "[w]hile a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from

the same facts, it is still permissible to plead such claims as alternative theories." <u>Singer v.</u>
<u>Xipto Inc.</u>, 852 F. Supp. 2d 416, 426 (S.D.N.Y. Mar. 20, 2012); <u>see also</u> <u>Wilk v. VIP Health</u>
<u>Care Servs., Inc.</u>, No. 10 CV 5530 (ILG), 2012 WL 560738, at *5 (E.D.N.Y. Feb. 21, 2012)
("while it is true that a claim for <u>quantum</u> <u>meruit</u> or unjust enrichment is precluded when a valid
contract governing the same subject matter exists between the parties, . . . a <u>quantum</u> <u>meruit</u>
claim may be alleged alongside a breach of contract claim") (internal citation omitted); <u>Bazak</u>
<u>Intern. Corp. v. Tarrant Apparel Group</u>, 347 F. Supp. 2d 1, 4 ("[u]nder New York law . . . [a]
plaintiff may simultaneously allege breach of contract and unjust enrichment in its complaint").

      In light of the parties' dispute as to the existence and scope of any agreement
concerning responsibilities for, <u>inter</u> <u>alia</u>, the E-Commerce Platform, and drawing all inferences
in Plaintiffs' favor, the Court concludes that the SAC adequately pleads a claim for unjust
enrichment by identifying an underlying benefit that was conferred upon the Defendants to the
Plaintiffs' detriment.  (<u>See</u> SAC ¶¶ 110 -112).  Although Plaintiffs cannot recover on both their
breach of contract claims and their unjust enrichment/<u>quantum</u> <u>meruit</u> claim, at this point, the
two types of claims can be pleaded in the alternative.  Therefore, the Court denies Defendants'
motion to dismiss the Eighth Cause of Action.

Ninth Cause of Action – Deceptive Business Practices and False Advertising:<br><u>AGQA and TDC against KGK NY, KGK Global and Bloom</u>

      Plaintiffs allege that Defendants KGK NY, KGK Global and Bloom engaged in
deceptive business practices and false advertising.  Although the specific legal basis of the claim
is not specified in the SAC, Defendants assume, and Plaintiffs do not deny in their opposition to
this motion, that Plaintiffs' claims are brought under New York's General Business Law
provisions relating to Deceptive Business Practices and False Advertising.  Sections 349 and 350

of the General Business Law prohibit, respectively, "deceptive acts or practices" and "false advertising" "in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law. §§ 349(a), 350. In the SAC, Plaintiffs allege that "defendants' fraudulent diamond grading scheme was targeted not only at jewelry retail store owners, but at individual members of the jewelry consuming public, especially insofar as it was perpetrated by creating fraudulent grading certificates that were readily available to the consuming public."  (SAC ¶ 114.)

      "To state a claim for deceptive practices under either section, a plaintiff must show: (1) that the act, practice or advertisement was consumer-oriented; (2) that the act, practice or advertisement was misleading in a material respect, and (3) that the plaintiff was injured as a result of the deceptive practice, act or advertisement."  Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).  "[T]he gravamen of [such claims is] consumer injury or harm to the public interest," and a plaintiff alleging an injury that is indirect or derivative, such that it arises solely as a result of injuries sustained by another party, lacks standing to pursue a claim under either of these sections.  City of New York v. Smokes-Spirits.Com., Inc., 12 N.Y.3d 616, 622-23 (2009) (internal quotation marks and citation omitted).  Even assuming, arguendo, that the advertising and sale of fraudulently graded jewelry would constitute an injury to the public compensable under sections 349 and 350,[7] "[a]lthough [Plaintiffs] incurred costs due to the alleged deception, [their] injury was still 'indirect' – and thus not compensable under section 349(h)."  Smokes-Spirits.com, Inc., 12 N.Y.3d at 622

---

[7]    See Eliya, Inc. v. Kohl's Dept. Stores, No. 06 CV 195 (GEL), 2006 WL 2645196, at *7 (S.D.N.Y. Sept. 13, 2006) (for these sections to apply, "a plaintiff must establish a direct harm to consumers that is greater than the general consumer confusion commonly found in trademark actions," such as "potential danger to the public health or safety") (internal quotation marks and citations omitted).

("[q]uite simply, had the allegedly deceived consumers not been improperly induced to purchase defendants' [fraudulently graded jewelry] then [Plaintiffs] would have no claim"); see also International Business Machines Corp. v. Platform Solutions, Inc., 658 F. Supp. 2d 603, 614 (S.D.N.Y. 2009) ("New York courts will not presume an intent to include recovery for derivative injuries within the scope of the statute in the absence of a clear indication of such intent from the Legislature.") (internal quotation marks and citation omitted).  Accordingly, Defendants' motion to dismiss the Ninth Cause of Action is granted.

> Tenth Cause of Action – Tortious Interference with Contract: AGQA and ESDN against Kothari, KGK NY, Bloom, Flyer Jewelry, Hostrup, Kaufman, Hecht and Sahoo

Plaintiffs' Tenth Cause of Action (which is really two claims) is asserted by AGQA and ESDN against KGK NY, Flyer Jewelry, Kothari, Bloom, Hostrup, Kaufman, Hecht and Sahoo for: (i) tortious interference with contract and (ii) tortious interference with prospective business relations.  Plaintiffs allege that Defendants undermined AGQA and ESDN's separate and independent contracts with the 70 retailers participating in the Marketing Program.  (SAC ¶¶ 119-21.)  To state a claim for tortious interference with contract, a plaintiff must allege "[1] the existence of [a] valid contract with a third party, [2] defendant's knowledge of the contract, [3] defendant's intentional and improper procuring of a breach, and [4] damages."  Quinn v. Jacobs, No. 12 CV 2423 (KBF), 2012 WL 3000673, at *2 (S.D.N.Y. July 16, 2012) (quoting White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y. 3d 422, 426 (N.Y. 2007)).  To plead a claim for tortious interference with prospective business relations, a plaintiff must allege that "(1) it had a business relationship with a third party, (2) [the defendant] knew of that relationship and intentionally interfered with it, (3) [the defendant] acted with the

sole purpose of harming Plaintiff or used wrongful means to do so, and (4) injury to the business relationship."  <u>Allocco Recycling Ltd. v. Doherty</u>, 378 F. Supp. 2d 348, 375 (S.D.N.Y. 2005) (citing <u>Carvel Corp. v. Noonan</u>, 350 F.3d 6, 17 (2d Cir. 2003)).

The SAC alleges that the Defendants "undermined" the relevant contracts and that the contracts have been "breached, cancelled, rescinded, or irreparably harmed." (SAC ¶ 121.)  According to Plaintiffs, they have adequately and clearly pled that AGQA and ESDN entered into independent agreements with the 70 retailers and they do not need to attach a copy of each agreement to the SAC.  (<u>See id.</u> ¶¶ 118-122.)  However, Plaintiffs do not even allege any of the essential terms of the purported agreements, stating merely that "[the] 70 individual jewelry store retailers . . . entered into separate contracts, with materially different scopes, subject matter and terms with ESDN and [AGQA]."  (<u>Id.</u> ¶ 41.)  Plaintiffs have also failed to allege that the Defendants caused an actual breach of the contracts at issue or to identify a single prospective customer, sale or transaction that they lost due to the Defendants' purported interference.  The Court finds that Plaintiffs have failed to allege adequately the existence of any valid third-party contracts or that the Defendants used "wrongful means" to interfere with Plaintiffs' business relationships or business opportunities.[8]  Accordingly, the Court grants Defendants' motion to dismiss the Tenth Cause of Action.

<u>Defendants Motion to Strike Paragraphs 53 and 54</u>

Defendants also move to strike paragraphs 53 and 54 from the SAC as improper

---

[8]    Defendants also argue that this claim should be dismissed because it was improperly asserted in contravention of the undersigned's rules after the Complaint was amended.  However, since the Court finds that Plaintiffs have failed to state a claim, it does not consider Defendants' procedural objection.

references to Defendant Bloom's criminal history.  Under Federal Rule of Civil Procedure 12(f), a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  To prevail, the moving party must demonstrate that there is no admissible evidence to support the relevant allegations.

Allegations are immaterial when the matter "has no essential or important relationship to the claim for relief."  See MTBE Products Liability Litig., 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005).  Paragraphs 53 and 54 of the SAC refer to Bloom's criminal history and the time that he spent in prison for overstating the value of the jewelry inventory of one of his businesses in order to support a multi-million dollar credit line, and allege that he repeated the same type of fraud on behalf of KGK NY and KGK Global.  (See SAC ¶¶ 53-54.)  Plaintiffs argue that this information is relevant because putting a convicted felon in charge of diamond grading was a violation of KGK NY's commitment under its authorized user agreement with AGQA and Plaintiffs are entitled to show that the grading fraud was not the result of accident or mistake.  Judge Carter struck the same allegations from a declaration by Yeko in the related case of Accurate Grading Quality Assur. Inc. v. Thorpe, 2013 WL 1234836, at *11, finding the allegations about Bloom's criminal history to be "inherently inflammatory, prejudicial and irrelevant to the issues before this Court."  However, Bloom was not a defendant in that action and that case focused on the alleged misappropriation of trade secrets and copyright infringement, which are not at issue here.  Here, the Court finds that the information about Bloom's criminal history is relevant to the claims asserted and thus is not inappropriately prejudicial or inflammatory.  Accordingly Defendants' motion to strike these paragraphs from the SAC is denied.

<u>CONCLUSION</u>

For the foregoing reasons, Defendant Thorpe's motion to dismiss the Complaint as against him for lack of personal jurisdiction (docket entry no. 41) is granted.  The Eleventh Cause of Action, which is asserted solely against Defendant Thorpe, is dismissed.  Defendant Thorpe's request for an award of his attorneys' fees and costs pursuant to 28 U.S.C. § 1927 and the Court's inherent authority is denied.  The Moving Defendants' motion to dismiss (docket entry no. 37) is granted in part and denied in part.  Defendants' motion to dismiss is granted as to Causes of Action Four, Six, Seven, Nine and Ten and is denied as to Causes of Action One, Two, Three, Five and Eight.  Defendants' motion to strike paragraphs 53 and 54 of the SAC is denied.

This Memorandum Opinion and Order resolves docket entry numbers 37 and 41. The Clerk of Court is requested to dismiss Defendant John Thorpe from this case.

The final pretrial conference in this case is adjourned to **January 9, 2015, at 10:30 a.m. in Courtroom 12D**.  The parties must consult and prepare submissions in advance of that conference in accordance with the Pre-Trial Scheduling Order issued in this case (docket entry no. 15).

SO ORDERED.

Dated: New York, New York
          September 30, 2014

      /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge